# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | **Consolidated Civil Action No.** |
| *Plaintiff,* | ) | **12-cv-11935-PBS** |
| v. | ) | |
| | ) | |
| **EVERLIGHT ELECTRONICS CO., LTD., ET AL.,** | ) | |
| *Defendants.* | ) | |
| | | |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | **Civil Action No. 12-cv-12326-PBS** |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| **EPISTAR CORPORATION, ET AL.,** | ) | |
| *Defendants.* | ) | |
| | | |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | **Civil Action No. 12-cv-12330-PBS** |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| **LITE-ON INC., ET AL.,** | ) | |
| *Defendants.* | ) | |
| | | |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | **Civil Action No. 13-cv-11097-PBS** |
| *Plaintiff,* | ) | |
| vs. | ) | |
| | ) | |
| **AMAZON.COM, INC.,** | ) | |
| *Defendant,* | ) | |
| | | |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | **Civil Action No. 13-cv-11575-PBS** |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| **APPLE, INC.** | ) | |
| *Defendant.* | ) | |

| | | |
|---|---|---|
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | Civil Action No. 13-cv-10659-PBS |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| **SAMSUNG ELECTRONICS CO., LTD.,** | ) | |
| **SAMSUNG ELECTRONICS AMERICA, INC.,** | ) | |
| **SAMSUNG LED CO., LTD.,** | ) | |
| **SAMSUNG LED AMERICA, INC.,** | ) | |
| **SAMSUNG ELECTRO-MECHANICS CO.,** | ) | |
| **LTD., and SAMSUNG ELECTRO-MECHANICS** | ) | |
| **AMERICA, INC.,** | ) | |
| *Defendants.* | ) | |
| _____ | ) | |
| | ) | |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | Civil Action No. 12-cv-11938-PBS |
| *Plaintiff,* | ) | |
| vs. | ) | |
| | ) | |
| **SEOUL SEMICONDUCTOR CO., LTD.,** | ) | |
| **SEOUL SEMICONDUCTOR, INC., and** | ) | |
| **SEOUL OPTODEVICE CO., LTD.** | ) | |
| *Defendants.* | ) | |
| _____ | ) | |
| | ) | |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | Civil Action No. 13-cv-11105-PBS |
| *Plaintiff,* | ) | |
| vs. | ) | |
| | ) | |
| **ARROW ELECTRONICS, INC.,** | ) | |
| **COMPONENTSMAX, INC.,** | ) | |
| **NRC ELECTRONICS, INC.,** | ) | |
| **NU HORIZONS ELECTRONICS CORP.,** | ) | |
| *Defendants* | ) | |
| _____ | ) | |
| | ) | |
| **TRUSTEES OF BOSTON UNIVERSITY,** | ) | |
| *Plaintiff,* | ) | |
| vs. | ) | Civil Action No. 13-cv-11831-PBS |
| | ) | |
| **LG INNOTEK USA, INC.,** | ) | |
| **LG ELECTRONICS, INC.,** | ) | |
| **And LG ELECTRONICS, USA., INC.** | ) | |
| *Defendant,* | ) | |
| _____ | ) | |

|  |  |
|---|---|
| **TRUSTEES OF BOSTON UNIVERSITY,**  )<br>*Plaintiff,*  )<br>        vs.  )<br>  )<br>**HEWLETT-PACKARD COMPANY**  )<br>*Defendant,*  )<br>  ) | Civil Action No. 13-cv-11832-PBS |
| **TRUSTEES OF BOSTON UNIVERSITY,**  )<br>*Plaintiff,*  )<br>        vs.  )<br>  )<br>**VYRIAN, INC.**  )<br>*Defendant,*  )<br>  ) | Civil Action No. 13-cv-11963-PBS |

**TRUSTEES OF BOSTON UNIVERSITY'S**
<u>**BRIEF IN SUPPORT OF OBJECTION TO SCHEDULING ORDER**</u>

# TABLE OF CONTENTS

I. MODIFICATIONS SOUGHT BY BOSTON UNIVERSITY ........................................... 1

    A. Discovery From "Non-Manufacturing Defendants" Is Not Solely Related to Damages. ................................................................................................................ 2

        1. The "non-manufacturing defendants'" infringement is an element of inducement and indirect infringement claims against the remaining defendants. ............................................................................................... 2

        2. The "non-manufacturing defendants" may not be customers of the remaining defendants, but instead customers of as-yet-unnamed third parties. .................................................................................................... 3

        3. The Scheduling Order does not allow sufficient time to piecemeal discovery from "non-manufacturing defendants" who are direct infringers based upon third-party parts. ...................................................................... 4

        4. The Scheduling Order does not restrict the "non-manufacturing defendants" from actively defending themselves or attacking Boston University, but prevents Boston University from protecting its interests. ... 6

        5. Boston University is not opposed to reasonable limitations. ....................... 6

    B. The "Non-Manufacturing Defendant" Suits are Not "Customer Suits" and the Inability to Identify "Manufacturers" Will Leave Unresolved Issues. .................... 8

        1. The "non-manufacturing defendants" suppliers of GaN LED devices are unknown. ..................................................................................................... 9

        2. The "non-manufacturing defendants" are more than resellers. ................... 9

    C. Defendants Should Not be Differentiated as Manufacturers and Non-Manufacturers. ................................................................................................... 11

II. CONCLUSION ............................................................................................................. 12

# **TABLE OF AUTHORITIES**

**CASES**

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004) ................................................................................................ 3

*Heat & Control, Inc. v. Hester Indus., Inc.*,
    785 F.2d 1017 (Fed. Cir. 1986) ............................................................................................ 6, 8

*Honeywell Int'l Inc. v. Acer Am. Corp.*,
    655 F. Supp. 2d 650 (E.D. Tex. 2009) ..................................................................................... 3

*Matthews Int'l Corp. v. Biosafe Eng'g, LLC*,
    695 F.3d 1322 (Fed. Cir. 2012) ............................................................................................. 11

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
    420 F.3d 1369 (Fed. Cir. 2005) ............................................................................................ 7, 8

*Pfizer Inc. v. Aceto Corp.*,
    853 F. Supp. 104 (S.D.N.Y. 1994) ........................................................................................... 7

*Select Retrieval, LLC v. L.L. Bean, Inc.*,
    No. 2:12-cv-00003-NT, 2013 WL 1099754 (D. Me. 2013) ................................................... 10

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011) ............................................................................................ 8, 9

*SynQor, Inc. v. Artesyn Tech., Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013) ................................................................................................ 8

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex Sys.*,
    458 F.3d 1335 (Fed. Cir. 2006) ............................................................................................. 10

*Trustees of Columbia Univ. in City of New York v. Roche Diagnostics GmbH*,
    272 F. Supp. 2d 90 (D. Mass. 2002) ........................................................................................ 3

Pursuant to Local Rule 16.1(g) of the United States District Court for the District of Massachusetts and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, Plaintiff Trustees of Boston University ("BU" or "Boston University") respectfully submits this brief in support of its Objection to Scheduling Order.[1]

## I. MODIFICATIONS SOUGHT BY BOSTON UNIVERSITY

Boston University objects to and seeks one modification of the Scheduling Order. Specifically, the "Fact Discovery" section of the Scheduling order currently contains the following provision:

> Discovery on issues related to damages *or from non-manufacturing defendants* shall not commence until after the Court issues a ruling on claim construction. Within fourteen days of such ruling, the parties shall meet and confer *to discuss a proposed schedule for discovery from non-manufacturing defendants* and to determine whether bifurcation of damages issues is appropriate. The parties shall file a proposed schedule one week thereafter.[2]

If literally applied, the highlighted portions deprive Boston University of fundamental discovery necessary to afford Boston University a fair opportunity to prove its claims; therefore, the following modification is requested:

> Discovery on issues <u>solely</u> related to damages ~~or from non-manufacturing defendants~~ shall not commence until after the Court issues a ruling on claim construction. Within fourteen days of such ruling, the parties shall meet and confer ~~to discuss a proposed schedule for discovery from non-manufacturing defendants and~~ to determine whether bifurcation of damages issues is appropriate. The parties shall file a proposed schedule one week thereafter.

---

[1] Scheduling Order, Case No. 12-cv-11935-PBS, Dkt. No. 169 at 4 (Oct. 3, 2013) (hereafter "Scheduling Order"). Boston University has filed a request with Magistrate Judge Boal to modify paragraph 5(c) of the Scheduling Order. That request should be heard on October 22, 2013. This Objection is only filed to ensure compliance with Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts. If the Magistrate Judge modifies the Order, these objections may in whole or in part become moot.

[2] Scheduling Order at ¶ 5(c) (emphasis added) (hereafter "Scheduling Order").

1

The modification eliminates the need to differentiate between "non-manufacturing defendants" and other defendants and enables Boston University to protect its patent rights by allowing discovery of all direct, indirect and inducing infringers. The modification is also necessary to allow Boston University the practical ability to obtain *infringement* discovery in time to both identify and add necessary parties and to use it under the current schedule against all current parties.

A.  **Discovery From "Non-Manufacturing Defendants" Is Not Solely Related to Damages.**

The inclusion of "non-manufacturing defendants" in Paragraph 5(c) equates discovery from such parties as being related solely to damages. That is legally and factually incorrect. Discovery from the "non-manufacturing defendants" is directly tied to both liability questions and defenses against counterclaims.

   1.  **The "non-manufacturing defendants'" infringement is an element of inducement and indirect infringement claims against the remaining defendants and third parties.**

Each of the "non-manufacturing defendants" directly imports, uses, offers to sell and sells devices that incorporate the infringing GaN LEDs. These are acts of direct infringement occurring in the United States that *must be proven* for Boston University to prevail on an inducement or contributory infringement claim against any supplier defendant (or any as-yet-unnamed third party supplier) who provides the "non-manufacturing defendants" GaN LED devices overseas for incorporation into U.S. bound products. Without the proof of direct infringement by the "non-manufacturing defendants," the claims for inducement and contributory infringement against the supplier defendants (or third parties) may fail for lack of

2

proof on an essential element – direct infringement.[3]

To the extent that the GaN LED components were supplied by one or more of the current named defendants, the agreements and course of dealings between the "non-manufacturing defendants" and their suppliers are relevant to Boston University's claims of indirect infringement and inducement by those supplier defendants.[4] The discovery of the facts of those relationships should be provided by both the supplier and the direct infringer to get a complete picture of the relationship between the two.[5]

### 2. The "non-manufacturing defendants" may not be customers of the remaining defendants, but instead customers of as-yet-unnamed third parties.

Boston University reverse engineered products sold by each of the "non-manufacturing defendants" and determined that they contained GaN LED components whose importation, use, sale and offers to sell in the United States directly infringe one or more claims of Boston University's patents. However, the fact that the "non-manufacturing defendants" are directly infringing Boston University's patents does not necessarily lead to the conclusion that their direct infringement results (in whole or in part) from GaN LED parts manufactured by another named defendant. It is not known whether the vast majority or a small percentage of the GaN LED components in the "non-manufacturing defendants" finished goods were supplied by ***any*** of

---

[3] *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement.").

[4] The identity of manufacturers and their control over a third party infringer's actions is relevant evidence for a finding of inducement. *See Trustees of Columbia Univ. in City of New York v. Roche Diagnostics GmbH*, 272 F. Supp. 2d 90, 106 (D. Mass. 2002); *see also Honeywell Int'l. Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 660-61 (E.D. Tex. 2009) (finding evidence of extra-territorial activities of manufacturers sales to be incorporated into consumer products sold in the United States relevant for discovery to determine induced infringement).

[5] To only be able to discover the relationship facts from the supplier is the equivalent of finding out the facts of a marital relationship by only speaking to one spouse. The full picture requires discovery from both parties.

the other named defendants.[6] Several possibilities exist. The "non-manufacturing defendants" may: (1) design the GaN LED components themselves and subcontract with "fabs" to produce them solely for their needs; (2) buy the GaN LED components from one of the named defendants who is obligated to indemnify them, thus making them a true "customer" whose claims can be resolved with resolution of the claims against their supplier; (3) buy them from one of the named defendants who refuses to indemnify them and who is not contractually liable to them on any indemnity claim; (4) buy them from a licensed manufacturer, thus eliminating any basis for their liability; or (5) buy them from third parties not already named as defendants in these cases as GaN LEDs or as parts of subsystems.[7] The threshold issue of who is a customer of whom is critical to the basic protection of Boston University's patent rights.

> 3. **The Scheduling Order does not allow sufficient time to piecemeal discovery from "non-manufacturing defendants" who are direct infringers based upon third party parts or whose infringement is induced.**

Boston University cannot be expected to conduct both liability and damages discovery against "non-manufacturing defendants" who procure parts from third parties in the period between the Court's issuance of a claims construction ruling and June 23, 2014[8] – a period likely to be less than 4 months. Worse, the Scheduling Order requires Boston University to designate experts and produce reports a mere 45 days after the Court issues a claims construction ruling,[9] but at that point *zero* discovery would be returned from 95% of the defendants, all of whom are direct infringers.

---

[6] Declaration of Christopher L. Evans ("Evans Decl."), Ex. A at 35:2-8 ("Most of the customers we sell to sell outside the United States. I mean, ***our product is one component of many components that are used to produce these products***. So the vast majority of sales that we make are in Korea, China, outside the United States. From our perspective, those sales are completely irrelevant to any of the issues in this case.") (emphasis added).
[7] *See* Evans Decl., Ex. B (TSMC acting as a "fab" for designer Cnlight).
[8] Scheduling Order at ¶ 5(b).
[9] Scheduling Order at ¶ 6(a).

4

The parties are not even required to "meet and confer to discuss a proposed schedule for discovery from non-manufacturing defendants" until 14 days after the claims construction ruling, only 31 days from the deadline for expert reports.[10]  Even if the defendants somehow agreed among themselves to submit a proposal to Boston University for discovery from "non-manufacturing defendants," any schedule they proposed could not possibly allow sufficient time for Boston University to (1) send and receive initial interrogatories and requests for production;[11] (2) have any objections to the discovery ruled upon;[12] (3) have the compelled material produced; (4) retain qualified experts and obtain clearance from the Defendants for them to review confidential information;[13] (5) have the experts review the material and prepare reports.  Under the Court's Scheduling Order, all of these activities would have to occur within 31 days to meet the deadline for the exchange of expert reports.  The minimum time it can possibly take under the applicable discovery rules, Local Rules related to briefing and the Court's normal schedule for hearing and deciding motions is 100 days.  The deadlines as written are in effect a deprivation of Boston University's rights to prepare a complete infringement and inducement case against the vast majority of direct infringers.

Also, forcing Boston University to wait until after a *Markman* order to find out what third parties are supplying the "non-manufacturer defendants" with infringing parts means that they cannot be added as defendants by February 28, 2014, the deadline in the Scheduling Order for

---

[10] Scheduling Order at ¶ 5(c)

[11] FED. R. CIV. P. 33(b)(2)(allowing 30 days for response); FED. R. CIV. P. 34(b)(2)(allowing 30 days for response).

[12] LR 7.1 requires a conference on any issues before filing a motion, then 14 days for a response. If no reply is filed, the soonest a motion to compel discovery responses could be heard is 15 days after its filing with a ruling to follow at a later date. By comparison, the parties opposing motions for a protective order have been pending since September 6, 2013 and will be heard on October 22, 2013, over 46 days after the initial filing.

[13] Under the Protective Order proposed by the Defendants, they can object to an expert and hold up his ability to review any confidential information for weeks, if not months.

amending pleadings and adding new parties without leave of Court. There is simply not sufficient time to stage infringement discovery, including discovery related to inducement and contributory infringement.

    **4.    The Scheduling Order does not restrict the "non-manufacturing defendants" from actively defending themselves or attacking Boston University, but prevents Boston University from protecting its interests.**

The Scheduling Order effectively prevents Boston University from conducting any discovery from over 95% of the named Defendants although each and every Defendant is actively asserting counterclaims against Boston University, is accused of directly infringing the Patents in Suit and no other named defendant is taking any responsibility via indemnity for any infringing acts of any "non-manufacturing defendant." This restriction on Boston University's ability to defend itself from counterclaims or prove the basic acts of infringement by 95% of the Defendants is included despite the fact that no evidence exists that the "non-manufacturing defendants" even purchase a majority, much less all of their infringing GaN LED parts from the remaining defendants, or that the claims against them would be resolved by a decision in another case.

Perhaps most unfair, the "non-manufacturing defendants" are free to seek discovery from Boston University on any topic while Boston University is unfairly rendered incapable of any reciprocal discovery to prove the basic elements of its liability case or defend itself from the asserted counterclaims.[14]

    **5.    Boston University is not opposed to reasonable limitations.**

Boston University can agree to limit discovery from the "non-manufacturing defendants" (during the pre-*Markman* order discovery period) to the following categories:

---

[14] *See Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("[T]he court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.'").

1. The entities from whom the "non-manufacturing defendants" have bought and currently buy GaN LEDs (either as discrete components[15] or as components within sub-assemblies[16]) since January 1, 2009;[17]

2. What specific GaN LED devices, or sub-assemblies including GaN LED devices, have been purchased (by model, or part number) from each supplier since January 1, 2009;

3. What buying and selling activities[18] took place (design-in, negotiations, payments to and from, offers for sale, presentations, etc.), and where have they occurred since January 1, 2009;

4. At what point (component, sub-assembly or finished goods) were the GaN LED devices imported into the United States for use and resale; and[19]

---

[15] GaN LEDs can be purchased directly from manufacturers or through distributors.

[16] Sub-system assemblies that include GaN LEDs are typically display assemblies, many of which are sold to the end user by a third party such as AU Optronics which buys GaN LEDs from the manufacturer then combines them with other components to make the displays that are then assembled into final products by companies like HP or Dell. In this situation, the importers, users and sellers of infringing devices in the United States are not customers of any GaN LED manufacturer, and it is unlikely that a contractual relationship exists between them.

[17] The existence of entities that "non-manufacturing" defendants have purchased and currently purchase from is evident in defendant Epistar Corporation's response to BU's interrogatory to identify all customers of the infringing products. Evans Decl., Ex. C at 9 ("Epistar will produce documents relating to its sales [to customers] of the Accused Products in the United States under Fed. R. Civ. P. 33(d), if any responsive, non-privileged documents exist.").

[18] Buying and selling activity includes offers for sale, applications engineering and invoicing/paying. These activities can also be evidence of inducement by suppliers. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005) (finding a fact issue of inducement based upon "evidence that SUMCO provides substantial technical support to Samsung Austin in the form of e-mail communications…. [T]he series of e-mails between SUMCO and the engineer at Samsung Austin demonstrate that SUMCO works with Samsung Austin to coordinate shipment dates and the quantity of wafers sent in each shipment and that SUMCO makes adjustments in the manufacturing process in order to address problems Samsung Austin encounters with the wafers.").

[19] The identification of who imports infringing goods is critical to asserting infringement by "importation." *See Pfizer Inc. v. Aceto Corp.*, 853 F. Supp. 104, 105 (S.D.N.Y. 1994) (holding

7

5. Whether the supply agreements between the "non-manufacturing defendants" and their suppliers include indemnification for patent infringement actions brought in the United States, and whether any other named defendant is indemnifying the direct infringer "non-manufacturing defendant."[20]

These are not solely "damages issues" but rather are fundamental issues of infringement, contributory infringement, and inducement. Unless Boston University is allowed to obtain this discovery, the Court will be "depriv[ing] a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."[21]

**B.    The "Non-Manufacturing Defendant" Suits are Not "Customer Suits" and the Inability to Identify "Manufacturers" Will Leave Unresolved Issues.**

The "non-manufacturing defendants" are not "customers" within the traditional meaning of the customer suit exception where suits against a customer's vendor take precedence. The Court's apparent treatment of the "non-manufacturing defendants" as mere customers is fundamentally flawed and completely unsupported factually or legally. The customer suit exception applies "where the first suit is filed against a customer who is simply a reseller of the accused goods."[22] The Scheduling Order effectively grants a "customer suit stay" to the litigation

---

that a party not conducting the act of importation not liable for infringement). *See also* Evans Decl., Ex. D at 3 ("As TBU is not alleging indirect infringement by Defendants, Defendants' activities outside of the United States are only relevant to the extent related to the allegedly infringing products imported into the United States by or for Defendants.").

[20] The inclusion of an indemnity agreement against United States patent infringement actions has been held to be an act of inducement to infringe. *See SynQor, Inc. v. Artesyn Tech., Inc.*, 709 F.3d 1365, 1384-85 (Fed. Cir. 2013) (indemnification of customers for infringement or liability for violating injunction held to be some evidence of inducement); *see also MEMC*, 420 F.3d at 1378 ("[A]n indemnification agreement will generally not establish an intent to induce infringement, but ... such intent can be inferred when the primary purpose is to overcome the deterrent effect that the patent laws have on would-be infringers.").

[21] *Heat & Control, Inc.*, 785 F.2d at 1024.

[22] *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).

(by prohibiting all discovery) in favor of the "non-manufacturer defendants" without even first establishing that they are in fact customers of any other defendant against whom discovery is allowed to proceed.[23]

### 1. The "non-manufacturing defendants" suppliers of GaN LED devices are unknown.

Because the GaN LED devices incorporated into the "non-manufacturing defendants'" products as component parts are not marked with any part numbers or commercial marks identifying the manufacturers, Boston University does not yet know if the "non-manufacturing defendants" even use GaN LED parts manufactured by any other named defendant or similar devices manufactured by third parties. The Defendants have steadfastly refused to disclose their customers as they try to run out the clock on the patents in suit. There is no evidence that any "non-manufacturing defendant" receives all, or even a majority of their GaN LED devices from any supplier defendant currently named.[24] Under such a circumstance, a "customer suit" stay is unsupportable and extremely unfair to Boston University.

### 2. The "non-manufacturing defendants" are more than resellers.

In this case, the "non-manufacturing defendants" are not simply resellers of the supplier defendants' products. They are not passive recipients who merely stock GaN LEDs on their shelves, like retailers. Importantly, no proof exists that the "non-manufacturing defendants'" acts of infringement will only result in damages cumulative to the damages recoverable from the supplier defendants. The only current evidence establishes the opposite: damages recoverable

---

[23] *See id.* at 1358 (holding the district court abused its discretion in granting the stay because the second-filed action would not completely resolve the issues between the parties).

[24] In supply chain management parlance, a critical component must have at least two sources. If a primary component source has an issue supplying the product (earthquake, fire, bankruptcy, etc.), it is critical to have a second source that can immediately fill the gap in supply. To make sure a second source is ready and available to replace a primary source, the component purchaser will always place 10-20% of its purchases from the second source. The second source is also necessary to prevent the primary source from exercising too much pricing power.

against the "non-manufacturing defendants" are likely *not* recoverable against the remaining supplier defendants at all.

The Federal Circuit has made clear that, "in evaluating the customer suit exception 'the primary question is whether the issues and parties are such that the **disposition of one case would be dispositive of the other**.'"[25] In the cases before the Court, there is no evidence that discovery from the remaining defendants will address any, much less all, of the issues raised in the suits against the "non-manufacturing defendants." The remaining defendants have repeatedly denied any liability to indemnify the "non-manufacturing defendants" who did not buy GaN LED parts *directly* from them.

In this situation where the manufacturers/suppliers are *expressly denying* that they are liable to indemnify any of the "non-manufacturing defendants," or that they induce or contribute to the "non-manufacturing defendants'" infringement, and where the "non-manufacturing defendants" are not even admitted or proven to be the remaining defendants' customers, the customer suit exception does not apply because the claims against the non-manufacturing defendants have not been admitted to resolve legally or practically the cases against the remaining defendants.[26] Under the scenario in this case where the suppliers/manufacturers are refusing to even acknowledge that they are the "non-manufacturing defendants" suppliers, the suppliers/manufacturers would lack standing if they had filed a case separately to have their suits

---

[25] *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) (emphasis added).
[26] *See Select Retrieval, LLC v. L.L. Bean, Inc.*, No. 2:12-cv-00003-NT, 2013 WL 1099754, at *3 (D. Me. 2013) (finding the customer suit exception to apply because "[b]y its agreement to defend and indemnify, Adobe has acknowledged that its product is responsible for any potential infringement").

take precedence.[27]

### C. Defendants Should Not be Differentiated as Manufacturers and Non-Manufacturers.

The Court's Scheduling Order differentiates between the defendants by referring to some as "non-manufacturers." This will lead to confusion and attempts by some defendants to avoid participating in discovery despite the fact they sell GaN LEDs as company-branded components with company part numbers. In the GaN LED industry, several companies are "fabless," meaning that although they design (or designate designs) and sell GaN LED devices under their product numbers and brands, they do not actually manufacture them. Instead, they contract out the manufacturing to "foundries" like Taiwan Semiconductor Manufacturing Corporation, or TSMC.[28]

The correct way to differentiate between industry players is to designate those who sell GaN LED devices as discrete products from those who sell finished goods that incorporate GaN LED devices. Finished goods might be sub-systems like display assemblies, or they might be final consumer goods like tablet computers or televisions. By using the term "non-manufacturing defendants" in the Scheduling Order, the Court has opened the door for companies that sell GaN LED devices (*e.g.* Everlight and Lite-On) as standalone components using company part numbers to claim that they are exempt from participating in discovery because they buy them from a contract manufacturer.

---

[27] *See Matthews Int'l. Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1329 n.4 (Fed. Cir. 2012) ("[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers.").
[28] *See* Evans Decl., Ex. B.

11

## II. CONCLUSION

For the reasons argued above, Plaintiff Trustees of Boston University objects to the Scheduling Order and respectfully asks this Court to modify paragraph 5(c) to the following language that protects Boston University's fundamental rights:

> Discovery on issues <u>solely</u> related to damages ~~or from non-manufacturing defendants~~ shall not commence until after the Court issues a ruling on claim construction. Within fourteen days of such ruling, the parties shall meet and confer ~~to discuss a proposed schedule for discovery from non-manufacturing defendants and~~ to determine whether bifurcation of damages issues is appropriate. The parties shall file a proposed schedule one week thereafter.

Date: October 8, 2013                   Submitted By,

/s/ *Michael W. Shore*
Erik Paul Belt, BBO #558620
EBelt@mccarter.com
Kelly A. Gabos, BBO #666219
kgabos@mccarter.com
McCarter & English, LLP
265 Franklin Street
Boston, Massachusetts 02110
Telephone: (617) 449-6506
Facsimile:  (617) 607-6035

*Of Counsel:*

Michael W. Shore (Texas 18294915)
mshore@shorechan.com
Alfonso G. Chan (Texas 24012408)
achan@shorechan.com
Andrew M. Howard (Texas 24059973)
ahoward@shorechan.com
Christopher L. Evans (Texas 24058901)
cevans@shorechan.com
Russell J. DePalma (Texas 00795318)
rdepalma@shorechan.com
**SHORE CHAN DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone (214) 593-9110
Facsimile (214) 593-9111

**COUNSEL FOR PLAINTIFF
TRUSTEES OF BOSTON UNIVERSITY**

## CERTIFICATE OF SERVICE

The undersigned certifies that the forgoing document, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 8, 2013.

                                         */s/ Michael W. Shore*
                                         Michael W. Shore